## Appeal of HOLLINGSWORTH, TURNER & CO.     Docket No. 656.

Where the stock of a subsidiary company was acquired with the stock of the parent company, the amount to be included in the consolidated invested capital in respect of the company acquired shall be computed in the same manner as if the assets had been acquired instead of the stock.

Submitted February 2, 1925; decided April 7, 1925.

*H. L. Chambers, C. P. A.,* for the taxpayer.
*Laurence Graves, Esq.,* for the Commissioner.

Before JAMES, STERNHAGEN, TRAMMELL, and TRUSSELL.

This is an appeal from a deficiency letter dated October 2, 1924, in which the Commissioner asserts a deficiency of $1,107.50 for the year 1919. The deficiency arose from the refusal of the Commissioner to allow certain items as invested capital and to allow certain deductions for salaries. From the evidence submitted, the Board makes the following

### FINDINGS OF FACT.

The taxpayer is an Indiana corporation with its principal office at South Bend, in that State. It is engaged in the business of manufacturing ice cream.

The taxpayer was incorporated March 18, 1912, to take over the stock and the property of the six corporations theretofore organized.

The taxpayer issued $15,000 of its stock for the stock of the Independent Ice Company, of a par value of $20,000. The tangible assets of the Independent Ice Company, as set forth in the minutes of this transaction, amounted to $3,533.90.

The taxpayer issued $7,500 of its capital stock in exchange for the assets of the Hollingsworth Ice Cream Company. The tangible assets of that company were reported in connection with this transaction as having a value of $5,000.35.

The taxpayer issued $8,500 of its stock for all of the outstanding stock of the J. L. Turner Company, $6,000 in par value, the assets of which company were at that date reported in the minutes covering the said transaction as $4,907.50.

The taxpayer issued $21,000 of its stock in exchange for the assets of the Cooperative Ice and Fuel Company, said assets being reported in the minutes in connection with that transaction as having a value of $9,934.70.

The taxpayer issued $14,000 par value of its stock for lands subject to mortgage obligations and an artificial ice plant owned by the Maxinkuckee Lake Ice Company. No value was assigned to the said land and artificial ice plant in the minutes of that transaction. The liabilities upon said land, however, amounted to $10,861, which liabilities were assumed in addition to the $14,000 of stock issued.

The taxpayer issued $9,000 par value of its stock for $30,000 capital stock of the City Ice Company. The minutes of this transaction do not state the value of the assets of the City Ice Company, other than that that company was at that time the holder of a second mortgage on the land and buildings of the Maxinkuckee Lake Ice Company.

It appears from the foregoing that the taxpayer issued at its organization $75,000 par value of its capital stock for tangible assets, including the stock of the Independent Ice Company, J. L. Turner Company, and the City Ice Company, of a net value apparently not exceeding $37,376.45, and assumed liabilities of approximately $10,861.

An examining revenue agent reporting under date of December 20, 1924, which report was offered in evidence as Exhibit 3 of the taxpayer, stated the total value of assets taken over from predecessor companies was $48,237.45, and that the said assets were im-

mediately thereafter entered upon the books of the taxpayer at a value of $86,643.45, an apparent excess of stock issued and liabilities assumed over assets acquired of $38,406.

Subsequent to the original acquisition of the stock of the Independent Ice Company by the taxpayer, one D. P. Clem acquired from the taxpayer $14,000 of the $20,000 of said stock.

In December, 1918, the taxpayer acquired $6,000 of the outstanding stock of the Independent Ice Company, and $8,000 of that stock, in some manner not disclosed by the evidence, became treasury stock of that company so that in December, 1918, the taxpayer owned $12,000 of the stock of the Independent Ice Company, being all of the outstanding stock of that company.

At December 31, 1918, the balance sheet of the Independent Ice Company showed a net worth of $16,835.62, as reported by the examining revenue agent. A balance sheet submitted by the taxpayer is in substantial agreement with the said net worth, the figure given by the taxpayer being $16,973.08.

The examining revenue agent reporting under date of September 7, 1923, adjusted the invested capital of the taxpayer in respects not here in issue, and included in the said invested capital the net worth of the Independent Ice Company, $16,835.62, conformably to the provisions of article 868 of Regulations 45. Thereafter, the Commissioner notified the taxpayer of the determination of a deficiency as above set forth and adjusted the taxpayer's invested capital by deducting the sum of $10,835.62, with the following explanation:

> The invested capital of the Independent Ice Company as at December 31, 1918, the date of acquisition, is confined to $6,000, the amount paid for the stock of this company.

The books of the company show additional allowances to officers as follows:

| | |
|---|---:|
| Salaries | $2,768.30 |
| Guy Staples & Hildebrand a/c note settlement | $1,000.00 |
| Guy Staples a/c | 384.15 |
| J. F. Sander, Sec'y | 692.08 |
| R. E. Burger, Treas | 692.07 |
| Back salary for 1917–18 and 19 | |

Below these entries was written the explanation:

> The above allowance for salaries arranged for apart from the records of Board of Directors at the beginning of 1917, but to be credited only when profits would justify and left to the direction of the secretary and treasurer and the above entry made by authority of such secretary and treasurer.

The explanation above set forth was crossed out by the treasurer at the time of the examination by the revenue agent, with the explanation that the salaries were considered not as an arrangement for back salary but as compensation for the year 1919. Said allowances were not shown as authorized by any written records of the board of directors.

At the hearing the witness for the taxpayer testified that the above amounts were for services as members of the board of directors.

DECISION.

The deficiency should be computed in accordance with the following opinion. Final decision will be settled on consent or on fifteen days' notice in accordance with Rule 50.

### OPINION.

JAMES: The taxpayer claims that the Commissioner erred in decreasing its invested capital by $10,835.32, in the manner above set forth in the findings of fact. With this contention we agree. Article 868 correctly states the rule to be applied in the case of subsidiary corporations when their capital stock is owned by, and their assets are incorporated with, the parent company in a consolidated balance sheet. The examining revenue agent correctly applied the rule and the Commissioner erred in departing from the computation of the examiner in this respect.

But it appears from the evidence and from the reports of the examining agent that the taxpayer at its organization took over tangible assets and in some cases, stock of other companies. On the face of the records made by the taxpayer itself there appears to have been an unexplained excess of capital stock issued over value of assets acquired, in the sum of $38,406. The taxpayer's invested capital for the year 1919 should, therefore, be adjusted by eliminating the said amount.

The second issue raised by the taxpayer relates to a deduction of $2,768.30 for additional compensation paid to officers in the year 1919. The evidence submitted on this point is contradictory and uncertain. The additional compensation claimed was shown on the books of the company as follows:

Salaries_____ $2,768.30

| | |
|---|---|
| Guy Staples & Hildebrand a/c note settlement_ | $1,000.00 |
| Guy Staples a/c_____ | 384.15 |
| J. F. Sander, Sec'y_____ | 692.08 |
| R. E. Burger, Treas._____ | 692.07 |
| Back salary for 1917–18 and 19. | |

The above allowance for salaries arranged for apart from the records of Board of Directors at the beginning of 1917, but to be credited only when profits would justify and left to the direction of the secretary and treasurer and the above entry made by authority of such secretary and treasurer.

The latter explanation was crossed out by the treasurer at the time of the examination by the revenue agent, with the explanation that the additional salaries were considered not as back salaries but as compensation for 1919. No formal authority for these allowances was recorded on the minutes of any of the meetings. Affidavits of the members of the board of directors were filed with the Commissioner to the effect that the notation that they were for salaries for 1917, 1918, and 1919, was in error, and not authorized, and that the allowances should be for 1919. The treasurer of the taxpayer corporation testified that during the years 1917, 1918, and 1919, the taxpayer was making little money and the officers allowed themselves small salaries, but on account of their increased living expenses and the fact that business prospects for the year 1919 were bright, the allowances were made on the books and the notations were made in December, 1919. He also testified that these allowances were for services as *directors* for the year 1919. No evidence was adduced to show that these additional allowances were reasonable compensation for services actually rendered.

We are of the opinion, in view of the conflicting and unsatisfactory evidence, that the Commissioner was justified in refusing to allow this item as a deduction for the year 1919.